James E. MOORE *v.* STATE of Arkansas

CR 76-211 551 S.W. 2d 185

Opinion delivered March 14, 1977
(Division II)

[Supplemental Opinion on Rehearing May 31, 1977.]

*Bill E. Ross,* Public Defender, for appellant.

*Bill Clinton,* Atty. Gen., by: *Terry R. Kirkpatrick,* Asst. Atty. Gen., for appellee.

Darrell Hickman, Justice. James E. Moore was convicted of rape in Mississippi County Circuit Court and sentenced to life imprisonment.

On appeal he alleges two errors: certain physical evidence, the product of an unlawful search and seizure by the police officers, was admitted into evidence; his statement was improperly admitted into evidence because the police obtained it after confronting him with the evidence and despite his indication he wanted counsel.

The testimony during the trial revealed that Moore late at night went to the victim's boarding house. She knew Moore and tried to dissuade him from entering her house. Moore pulled a gun, forced his way in, robbed her, raped her

and shot her at least twice. A boarder in her house discovered her early the next morning and called the police. The police arrived on the scene and called an ambulance. The victim was taken to the hospital's emergency room when she told the police who had raped, robbed and shot her. The police immediately went to the home of Moore's parents, arriving there at about 7:00 a.m. Two officers covered the back entrance and two officers entered the front of the house. Although the facts are somewhat disputed, at least one officer had a shotgun in his hand when they entered the house. The officers testified that Moore's parents consented to their entry and a search of the premises; Moore's parents disputed the officers' testimony. The officers went into a bedroom and found Moore asleep. They immediately arrested him and he was taken to jail. The officers remaining on the scene proceeded to search the house. In a room adjacent to Moore's bedroom, they found a .32 pistol hanging on the wall and a purse containing papers which belonged to the victim. In Moore's bedroom they found a gun, some clothes and other articles under his bed.

Even though the officers testified that they had the oral consent of Moore's parents to search the house, a list of the items seized was not given to Moore's parents as required by Arkansas law. See Rules of Crim. Proc., Rule 11.4 (1975).

The next day an officer obtained a statement from Moore. He showed Moore the evidence that was seized at the time of the arrest. When Moore was advised of his rights, he indicated that he would like to have a lawyer. He started to call a lawyer but stated that he did not have the money to hire a lawyer. The interrogating officer did not explain Moore's right to counsel and proceeded to question Moore. Moore made a statement implicating himself in the crime. The statement and all of the physical evidence taken from Moore's house were admitted into evidence by the trial court.

The police were certainly justified in immediately entering the house to arrest Moore. The victim had stated she knew Moore and apparently there was no problem in identifying the suspect. The state argues that Moore's parents consented to the search and that the search was necessary to prevent the destruction of evidence. These two arguments

hardly merit discussion. Two police cars containg four officers surrounded the house of Moore's parents early in the morning and two officers entered the front door with at least one of them having a drawn weapon. Under such circumstances, the state must prove that the consent was, in fact, freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543 (1968). *White v. State,* 261 Ark. 24, 545 S.W. 2d 641 (1977). The proof falls far shot in this instance. There is no evidence in the record to support the argument that the search was necessary to prevent destruction of the evidence. There is no reason one of the officers could not have obtained a search warrant while the other officers remained at the scene.

Even though the officers did not have a search warrant or legal consent to search the premises, the law permits a search of the area within the immediate control of the person arrested. See Rules of Crim. Proc., Rule 12.2. The purpose of this rule is to permit officers to seize weapons or evidence within the reach of the suspect which might be destroyed. Several items of evidence were found in Moore's bedroom. However, a search of the rest of the house turned up a .32 pistol and a lady's small purse, which contained documents. We hold that only those items in Moore's bedroom were lawfully seized and all other evidence was improperly seized.

The U.S. Supreme Court discussed a similar situation where a search was made without a search warrant or consent. *Chimel v. California,* 395 U.S. 752 (1969). In the *Chimel* case the court stated:

> There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control" — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.
>
> There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made

only under the authority of a search warrant. The "adherence to judicial processes" mandated by the Fourth Amendment requires no less.

The statement taken from Moore was obtained after he had been shown the evidence which was seized at his parents' home. Since part of the evidence was illegally seized, the statement is not admissible. See *Walton & Fuller* v. *State,* 245 Ark. 84, 431 S.W. 2d. 462 (1968).

In addition, when Moore was questioned he indicated he wanted a lawyer. We have made it quite clear that if an individual indicates in any manner prior to his statement, or during his interrogation, that he wishes to exercise his rights, the interrogation must cease. *Webb* v. *State,* 258 Ark. 95, 522 S.W. 2d 406 (1975). *Davis* v. *State,* 243 Ark. 157, 419 S.W. 2d 125 (1967).

The judgment is reversed and this cause remanded for a new trial consistent with this opinion.

Reversed and Remanded.

We agree. HARRIS, C.J., and FOGLEMAN and ROY, JJ.

Supplemental Opinion on Rehearing
delivered May 31, 1977

CONLEY BYRD, Justice. On rehearing appellant points out that no search of the premises was made until after he was arrested and removed from the premises. He then contends that the evidence seized by the officers in his bedroom should also be suppressed. We must agree with appellant on both contentions.

The record shows through both Captain Denver Johnson and Detective Claybourn Hicks that the appellant was not present when the search of his home began. Captain Johnson testified that they did not start the search until after appellant was taken to jail and Detective Hicks testified that appellant was on his way to the police department at the time of the search.

In *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), the State sought to justify a search of the house as being incident to an arrest. In reversing the conviction and holding the search unlawful, the Court said:

> ". . . Clearly, the general requirement that a search warrant be obtained is not lightly to be dispensed with, and 'the burden is on those seeking [an] exemption [from the requirement] to show the need for it. . . .' "

> ". . . When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the

officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person, and the area 'within his immediate control' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence of judicial processes' mandated by the Fourth Amendment requires no less.''

Again in *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971), the Court reiterated:

"Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be 'a showing by those who seek exemption . . . that the exigencies of the situation made that course imperative.' ' [T]he burden is on those seeking the exemption to show the need for it.' In times of unrest, whether caused by crime or racial conflict or fear of internal subversion, this basic law and the values that it represents may appear unrealistic or 'extravagant' to some. But the values were those of the

authors of our fundamental constitutional concepts. In times not altogether unlike our own they won — by legal and constitutional means in England, and by revolution on this continent — a right or personal security against arbitrary intrusions by official power. If times have changed, reducing every man's scope to do as he pleases in an urban and industrial world, the changes have made the values served by the Fourth Amendment more, not less, important."

On the uncontroverted evidence, it cannot be said that the exigencies of the situation were such as to bring the search of the bedroom, after appellant was on his way to jail, within an exemption that justified the search as being incident to a lawful arrest. It follows that the evidence recovered in the bedroom after appellant was on his way to jail in the squad car must also be suppressed.

The trial court's theory that the possibility of destruction of the evidence by appellant's family was a sufficient exigency to support the officers' warrantless search was discounted in *Chimel* v. *California, supra* — see dissent of White, J. There is no contention or suggestion that appellant's mother or father were confederates in the crime and to assume that they would willingly become accessories after the fact to such a crime is not a fact upon which one is entitled to rely as justification for the invasion of such a precious right.

Rehearing granted on behalf of appellant.

HARRIS, C.J. and HICKMAN, J., dissent.

DARRELL HICKMAN, Justice, dissenting. We decided first in this case that the items found in the bedroom where Moore was arrested were not unreasonably obtained by the police. We decided that the victim's purse and another gun, which were in a separate room, could not be admitted into evidence because these items were not under the control of Moore. We based this decision on the language contained in the case of *Chimel* v. *California,* 395 U.S. 752 (1969). In the *Chimel* case, the arresting officer had a warrant for Chimel's arrest but no search warrant. When the police entered the house, over

Chimel's objections, they conducted a random search of the entire house, including the garage, attic, workshop, and even ordered Chimel's wife to open drawers in the furniture. The Supreme Court of the United States reviewed the law of search and seizure incidental to an arrest in the *Chimel* case. While pointing out that the law had been inconsistently applied by the courts, the court stated that a search incident to arrest in a dwelling should be limited to the person of the accused and the "area from within which he might have obtained either a weapon or something that could have been used as evidence against him." Another reason for this rule is that the evidence may be destroyed or disposed of. The items which were found under the bed of Moore were clearly within his control and one of the items was a gun which Moore could have used against the officers. Therefore, the seizure clearly falls within the rule announced in *Chimel*. However, the majority now says that because Moore was not on the premises at the moment the search was made it cannot be sustained constitutionally.

It is not disputed that the police, after talking to the victim, who had been raped, shot three times and robbed, were justified in the early morning hours, apparently between six and seven a.m., in going immediately to the residence of Moore's parents, where he was known to reside, and arresting him without a warrant. The victim had just told the police, at the hospital, that she knew Moore personally and identified him as the assailant. We concluded that the police were justified, had probable cause, to enter the dwelling without an arrest warrant to arrest Moore. At the same time we are now saying that evidence of this crime for which he was arrested without a warrant cannot be used as evidence. This reasoning is typical of the decisions we, that is the courts, have made in the area of the law of search and seizure. There are literally thousands of cases in federal and state courts regarding the law of search and seizure and it has become a legal tangle that not only the lawyers and the judges have to constantly wrestle with but also must be puzzling to laymen and officials who must abide by these decisions or perform their duty consistent with these decisions. At one time the courts were too lenient on search and seizure, and now, in my opinion, they are too technical and strict in apply

ing the law. The law of search and seizure and the sometimes unreasonable application of the law of search and seizure have created a legal maze that actually prevents the orderly administration of justice rather than aids it.

There must be a middle ground and it is the duty and obligation of the courts to find it. The constitutional rights of citizens must be protected but at the same time reasonable rules, or a reasonable application of rules, must be found so that the officials charged with enforcing the law have tools to fairly investigate a case, collect evidence, and see that criminals account for their misconduct. It is just as wrong for a person who commits a crime to go free because of a technical mistake by a police officer as it is for a police officer to violate the constitutional rights of an individual. Both parties should be held individually responsible for their individual misconduct. In my opinion we have been too easy on officials who violate the rights of individuals and too quick to find a technical violation of the rules of law.

I could accept the law that a person cannot be arrested in his home without an arrest warrant, and that his home at the same time could not be searched without a search warrant; or I could accept the law that a person can be arrested without an arrest warrant on probable cause, and at the same time his premises reasonably searched for any evidence *connected* with the alleged crime.

These are propositions that are both reasonable and can be scrutinized by the courts to guarantee the reasonable use of police power. But to say that a person can be taken from his home in the early morning hours without an arrest warrant and at the same time that the police cannot lawfully use evidence taken from under his bed, obviously connected with the crime, cannot be defended logically. Which is the greater threat, or potential threat, to individual rights?

The reason that evidence is normally not used in a trial against a defendant, which has been obtained in violation of the law of search and seizure, is that it is tainted by an illegal act by the police, suspect, because it may have been tampered with, or it may not or cannot be related to the crime involved.

There is no evidence in this record that this evidence was suspect in any way, unreliable to any extent or related to any other offense except the crime charged. Moore could receive a fair trial and is in no position, based on the record before us, to argue that he is prejudiced in any way by this evidence being admitted into evidence. The only objection is technical — that he was on his way to jail. In my opinion the majority is unreasonable in the application of the law to the facts.

This court has adopted rules of criminal procedure which are a codification of the current decisions on the law of search and seizure. Their meaning and application will be the subject of much litigaton in the years to come, and I might add, the subject of much dispute and disagreement among lawyers and judges. However, we should in every instance in the application of these rules ask ourselves, was the action of the police unreasonable? Is there evidence of a deliberate attempt by the police officers to evade the law to obtain evidence? Was a mistake by the police a technical mistake or a substantial mistake? Was their act in good faith? Most of all, is the evidence relevant, reliable and is the accused prejudiced in any way by the admissibility of the evidence? In our rules of criminal procedure, we have set forth certain criteria for examining evidence which may have been seized contrary to the law. See Rules of Crim. Proc., Rule 16.2 (1976). We say in these rules that before evidence is suppressed because of a violation of constitutional rights, a determination must be made as to: the importance of the particular interest violated; the extent of deviation from lawful conduct; the extent to which the violation was willful; the extent to which privacy was invaded; the extent to which exclusion will tend to prevent violations of these rules; whether, but for the violation, the things seized would have been discovered; and, finally, the prejudice to the defendant and the effect upon his ability to defend himself. The majority in granting the rehearing in this case have ignored this rule and have not apparently looked to any of these criteria to see whether or not the violation they find should result in exclusion of the evidence.

There is ample authority that the presence of the accused at the moment of the search is not always necessary. In

the case of *U.S. v. Edwards,* 415 U.S. 800 (1974), the court up-held a search of a defendant's clothes ten hours after he was arrested. The court stated:

> This was no more than taking from respondent the effects in his immediate possession that constituted evidence of crime. This was and is a normal incident of a custodial arrest, and reasonable delay in effectuating it does not change the fact that Edwards was no more imposed upon than he could have been at the time and place of the arrest or immediately upon arrival at the place of detention. The police did no more on June 1 than they were entitled to do incident to the usual custodial arrest and incarceration.

The court quoted from a United States District Court case:

> While the legal arrest of a person should not destroy the privacy of his premises, it does — for at least a *reasonable* time and to a *reasonable* extent — take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence. *United States v. DeLeo,* 422 F. 2d 487 (1970).
> [Emphasis added.]

In another case the United States Supreme Court held that a car which was searched without a search warrant a week after the arrest was a legal search. *Cooper v. California,* 386 U.S. 58 (1969).

These decisions indicate, just as the constitution states, that it is unreasonable searches and seizures that are unlawful.

The majority now says there are no exigent circumstances in this case which would warrant the police in searching this house without a warrant. I would point out that the arrest occurred immediately after Moore had been personally identified by the victim as her assailant; that the police officers immediately proceeded to Moore's residence, which was the home of his parents, between the hours of six and seven a.m.; arrested Moore and sent him to jail; and immediately in the presence of his parents who owned the home

found this evidence. The majority assumes that the parents of this young man, knowing that he was charged with a serious crime, would not have done everything they could to help their son. Such an assumption presumes that a parent will aid in the conviction of a child. To say that one of the police officers should have guarded the house or evidence while another one went to get a warrant is to propose a legal sham. Either the evidence could have, and should have been gathered at that time or it could not be gathered at that time. That brings us to the question which must be answered in every case, and that is, was the search itself reasonable under the circumstances? I can find nothing in the majority opinion granting the rehearing which would justify excluding the evidence found under the bed of Moore.

I would deny the rehearing.