Marvin Dewayne MOORE *v.* STATE of Arkansas

CR 79-224                                   594 S.W. 2d 245
Supreme Court of Arkansas
Opinion delivered March 3, 1980

*Harold L. Hall & Stephen Safly,* for appellant.

*Steve Clark,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. We exercised our discretion to grant the Petition for Review of the opinion of the Court of Appeals pursuant to Rule 29.6(b) and (c) of the Rules of the Supreme Court.

During appellant's trial for possession of controlled substance with the intent to deliver, the trial court overruled his motion to suppress evidence as having been obtained by an illegal search and seizure. The only point raised on appeal is that the trial court erred in denying the motion to suppress. We are of the opinion the motion should have been granted.

Bruce Burkhalter had been arrested for possession of a controlled substance and in an effort to gain favorable treatment he agreed to cooperate with the local police and Special Agent James R. Adkins of the DEA in setting appellant up for a charge of possession or delivery. In keeping with the plan, Burkhalter informed Adkins and others on January 31, 1978, that appellant would arrive in Little Rock from Texas on February 1, 1978, between the hours of 6:00 and 10:00 p.m., with 10 ounces of PCP for delivery to a man named Arthur Batch. The officers learned from Texas officials appellant would be driving a Toyota station wagon with Texas license number NVF 868. The identification of the vehicle was known by Adkins and others no later than 6:00 p.m. on February 1, 1978. A surveillance was placed on Batch at 6:00 p.m. and the arrest of appellant occurred about 8:45 p.m.

When appellant and Batch made contact at a local motel the officers closed in and arrested appellant. He was immediately taken from the Toyota station wagon bearing Texas license number NVF 868 and handcuffed. His wife and child were taken from his vehicle and placed in another police vehicle. The Toyota was secured at that time.

A deputy prosecuting attorney and Officer Adkins were in their command post in the First National Bank Building. It was a cold night with temperatures below freezing and the streets were very slick. After the Toyota was secured the officers at the scene requested instructions from Adkins and the deputy prosecutor. They were instructed to search the vehicle without a warrant. At the hearing on the motion to suppress Adkins stated:

> Well, they secured the vehicle. I asked them to verify that it was Moore driving and when they did, I conferred with the assistant prosecuting attorney, Robert Crank, and we gave them the go ahead to search the vehicle.

Acting upon the advice of Officer Adkins and the deputy prosecuting attorney, the officers searched the appellant's vehicle. After about 20 minutes they located the appellant's shaving kit which contained the contraband.

At the conclusion of the hearing on the motion to suppress the court found that probable cause existed and further stated:

> Okay. It's the Court's view that the probable cause existed to search the vehicle and this probable cause was fully established only very shortly before the vehicle was searched and that is, they established the gray station wagon with Texas License Plate NVF 868; that exigent circumstances existed in this case in that it was below freezing temperature on the night in question; the roads were slick, and Mr. Crank is not a magistrate, he would have had to, at that time of night, traveled some distance from his location which was apparently the, one of the downtown buildings. The two year old child and the

wife were to be considered under the circumstances in this case; and I feel that exigent circumstances existed and the search was valid. Anything else?

We are involved in this case with the Fourth Amendment to the Constitution of the United States which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

We also consider the Arkansas constitutional provisions relating to searches and seizures which are set out in art. 2 § 15 as follows:

> The right of the people of this State to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.

We are not unmindful of the "automobile exception" which has developed over the past several years. However, we do not view the present case an "automobile exception" case. We think the present facts fit into the "suitcase doctrine" as set out in *Sanders* v. *State,* 262 Ark. 595, 559 S.W. 2d 704 (1977), affirmed, 442 U.S. 753, 99 S.Ct. 2586, 61 L. Ed. 2d 235 (1979).

The primary holding in *Sanders* was that in the absence of exigent circumstances police are required to obtain a warrant before searching luggage taken from an automobile properly stopped and searched for contraband. In the present case there was probable cause and the automobile was properly stopped. Officer Martin performed the warrantless search only after being directed to do so by Special Agent Adkins and the deputy prosecuting attorney. The trial court

was correct in holding there was probable cause. However, the court further held that exigent circumstances existed for the reason the streets were slick and the temperature was below freezing. Circumstances excusing a search without a warrant must be exigent. These circumstances must be "jealously and carefully" drawn. *Jones* v. *United States,* 357 U. S. 493, 78 S. Ct. 1253, 2 L. Ed. 2d 1514 (1959). These exceptions are cases involving danger to the officers or risk of loss or destruction of evidence. *United States* v. *United States District Court,* 407 U.S. 297, 92 S. Ct. 2125, 32 L. Ed. 2d 752 (1972). The United States Supreme Court has held that in the limited situations where a warrantless search may be conducted, the burden of proof is upon those seeking to justify the exception to show there was a need for it. *United States* v. *Jeffers,* 342 U.S. 48, 72 S. Ct. 93, 96 L. Ed. 59 (1951); and *Chimel* v. *Calif.,* 395 U.S. 752, 89 S. Ct. 2034, 53 L. Ed. 2d 538 (1969). The reason for sometime allowing a warrantless search of an automobile is based upon the inherent mobility of an automobile which often makes it impracticable to obtain a warrant before the search. *United States* v. *Chadwick,* 433 U.S. 1 (1977). The automobile here was secured and the shaving kit was in the exclusive control of the police.

In the present case the officers knew at least 24 hours in advance which vehicle the appellant would be driving. It was known with certainty which vehicle he was driving at least two hours prior to the time he was apprehended. During this time the appellant, Batch, and several teams of officers had been able to drive around the streets of Little Rock without any apparent mishaps. There was no valid reason why a warrant could not have been obtained during this time even if it did require someone to go get a search warrant during bad weather. So far as we are concerned, the Fourth Amendment is not suspended during inclement weather.

We think a person has a reasonable expectation, relying on the Fourth Amendment to the Constitution of the United States and art. 2 § 15 of the Constitution of Arkansas, of privacy in the matter of his personal luggage, including a shaving kit. There could hardly be anything which would be considered more private than a shaving kit which ordinarily includes one's toothbrush, toothpaste, shaving equipment, medication and other highly personal items. We hold that the

warrantless search under the circumstances as related above was improper and the motion to suppress should have been granted. The case is reversed and remanded to the Court of Appeals with directions to remand it to the trial court with directions to grant the motion to suppress the evidence obtained without a warrant.

Reversed and remanded.

GEORGE ROSE SMITH, HICKMAN and STROUD, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. I am sympathetic to the statements of Justice Stroud. Since I have been a member of this Court, I have expressed similar sentiments regarding the law of search and seizure as it has been developed by the United States Supreme Court and other courts. See, *Moore v. State,* 261 Ark. 274, 551 S.W. 2d 185 (1977) (supplemental opinion on rehearing) (Hickman, J., dissenting). That law has become a legal maze difficult to understand and impossible to administer. We have allowed the police to enter a man's house and arrest him without a warrant, but having done that, not allowed them to search the house. *Moore, supra.* The police may not search a suspect's suitcase when found in a taxicab, *Sanders v. State,* 262 Ark. 595, 559 S.W. 2d 704 (1977), but they may search a defendant's purse when both have been taken to the police station. *Sumlin v. State,* 266 Ark. 709, 587 S.W. 2d 571 (1979). A car stopped on the highway has been held the proper subject of a warrantless search sometime after the driver's arrest, *Chambers v. Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), while a car found in the defendant's driveway has been held not to be. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 564 (1971). To me, while these cases can be subtly distinguished, they cannot be persuasively reconciled.

The Constitution of the United States in its pure form, unadulterated by court decisions, is not difficult to understand nor to interpret. Amendment 4 reads:

[Unreasonable searches and seizures.]—The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,

shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The majority in this case does not deny that the police could have gotten a search warrant later. In fact, according to the case law the vehicle could have been searched later if it were properly impounded by the police. See, *Cooper* v. *California,* 386 U.S. 58 (1967). The search was not unreasonable. The police violated no statute. There is no evidence of bad faith on their part. It is simply a case of the majority following a long line of precedents that seem to march forever into a technical maze that not even the judges can navigate with any confidence.

The Supreme Court of the United States, in the case of *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961) decided that the only way to enforce the Fourth Amendment prohibition against unreasonable searches was to forbid the use of any evidence obtained in such a search. This is called the exclusionary rule. There is no provision for such a rule in the United States Constitution. It is simply a device created by the United States Supreme Court to enforce the Constitution. The rule is based on the premise that evidence, tainted by an illegal search, should not be used against an individual. Furthermore, it is designed to deter the errant policeman from ignoring or willfully violating the law. While such reasons are valid and while such a rule can be defended logically and legally, the United States Supreme Court has failed to set forth reasonable guidelines on searches and seizures. It has become impossible to administer the law. Judges cannot agree on what the law is regarding search and seizure. In the case before us, three judges of the Court of Appeals found the search reasonable; three found it unreasonable. Both cite cases to support their judgment. We, too, are divided. What is the average policeman to think of such confusion? How is he to know when a search is lawful?

There is no doubt that the exclusionary rule had had a therapeutic effect on the criminal justice system. Policemen today are well informed regarding individual rights and in Arkansas policemen must be qualified as they have never

been required to be before. See Ark. Stat. Ann. §§ 42-1005 et. seq. (Repl. 1977).

I have come to the conclusion that the exclusionary rule must be abandoned, that rather than rewarding the guilty defendant, we should punish the guilty policeman. We should look at each case as to determine if there was prejudice to the individual, if there was a willful violation of individual civil rights, and, most of all, if the search was reasonable. The law of search and seizure, as it has developed, has been a paste-pot job of exceptions to exceptions without any reference to the language of the Constitution. The language is not absolute. The word is reasonable. Ironically, the law has become unreasonable.

The dilemma to an appellate judge, a trial judge, or even a policeman, is what to do about it. Of course, each person must make their own decision and if they are in authority they must do their best to follow the law and comply with their oath of office. I have concluded that foremost in any search and seizure case, the plain language of the constitution should be applied to the facts before any effort is made to find a decision that might be exactly in point. The passion of appellate judges to find a case exactly in point, distinguish cases that cannot be reasonably distinguished, or extend the law ad infinitum, is what has led to the problem. There cannot be precedents for every conceivable case and we should not try to create them. There should, on the contrary, be general guidelines followed with reason.

When I apply that approach to the case before us, I can only conclude that the search in this case was reasonable. It was late at night; the police had to act quickly. There was inclement weather and it, in fact, would not have been reasonable to do anything except search the vehicle. Our rules permit it. Rules of Crim. Proc., Rule 12.4. The idea that appellate judges can sit back in the comfort of their offices months later and suggest that the municipal judge should be rousted out, or found at some social gathering, and asked for a warrant is nonsense. It is not a question of what could have been done. It is a question of whether what was done was reasonable.

JOHN F. STROUD, Justice, dissenting. Obviously the drafters of the Fourth Amendment to the United States Constitution and the drafters of Article 2, § 15 of the Arkansas Constitution could not have contemplated the search and seizure of automobiles in 1791 or in 1874. It was, therefore, inevitable that an automobile exception would evolve from the courts when automobiles became commonplace. *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), held:

> [T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

> Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. . . . [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise . . . 267 U.S. 153-156, 45 S. Ct. 285, 69 L. Ed. 551, 552.

The automobile exception was expanded in *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970), where the United States Supreme Court held that a warrantless search of an automobile taken to a police station after the accused and others had been arrested while riding in the automobile was not a violation of the Fourth Amendment inasmuch as the police officers had probable cause to arrest the occupants and an immediate search in connection with

the arrest would have been constitutionally permissible. They concluded, therefore, that it was not unreasonable to take the automobile to the police station before making the search as probable cause for the search still existed.

In 1977, the United States Supreme Court decided the case of *United States* v. *Chadwick,* 433 U.S. 1, 97 S. Ct. 2476, 53 L.Ed. 2d 538 (1977), which has been cited as establishing the "suitcase doctrine." It was held to be illegal when the arresting officers made a warrantless search of a double-locked footlocker found inside the trunk of a parked automobile. The court opened Pandora's box by commenting that the expectation of the defendants that the contents of the footlocker would remain free from public examination was an important consideration.

In the same year, the Arkansas Supreme Court in *Sanders* v. *State,* 262 Ark. 595, 559 S.W. 2d 704 (1977), held illegal the warrantless search of a suitcase that had been removed from the trunk of a taxi by the arresting officers. There was no question of probable cause, as the officers acted on a tip from a reliable source that the suitcase contained marijuana, which in fact it did. The court found no exigent circumstance and pointed out that luggage, unlike an automobile, is generally not open to public view; that a person expects privacy in personal luggage to a greater degree than in an automobile; and that once the suitcase was seized, there was no longer a mobility factor. The United States Supreme Court affirmed the decision in 1979 in *Arkansas* v. *Sanders,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979), and held that a warrant is required to search personal luggage taken from an automobile to the same extent as it is required to search luggage in other locations. I agree with the comments of Justices Blackmun and Rehnquist in their dissenting opinion where they said, 99 S.Ct. 2595, 2597, 61 L. Ed. 2d at 248, 250:

> The Court today goes farther down the Chadwick road, undermines the automobile exception, and, while purporting to clarify the confusion occasioned by Chadwick, creates in my view, only greater difficulties for law-enforcement officers, for prosecutors, for those suspected of criminal activity, and, of course, for the

courts themselves. Still hanging in limbo, and probably soon to be litigated, are the briefcase, the wallet, the package, the paper bag, and every other kind of container.

. . .

The lines that will be drawn will not make much sense in terms of the policies of the Fourth and Fourteenth Amendments. And the heightened possibilities for error will mean that many convictions will be overturned, highly relevant evidence again will be excluded, and guilty persons will be set free in return for little apparent gain in precise and clearly understood constitutional analysis.

The majority has obviously reached the point unanimously refuted by this court less than two years ago in *Berry* v. *State*, 263 Ark. 446, 565 S.W. 2d 418 (1978), where heroin was found during a warrantless search of a bank bag and a closed, but unlocked, briefcase, both discovered within the passenger compartment of an automobile. Justice George Rose Smith indicated that if such evidence were suppressed: "persons having contraband drugs in their possession could prevent a search for such drugs in an automobile simply by carrying the articles in a suitcase rather than in a sack or in a box."

I think it farcical to distinguish between searches on the basis of whether the contraband is found in a briefcase, suitcase, or shaving kit, but if I engage in such semantics, the facts of this case more nearly square with the *Berry* case than the *Sanders* case. In *Sanders,* the arresting officers had a tip that the marijuana was in that particular suitcase, but in both *Berry* and this case, the officers were conducting a general search incident to the arrest, without direction or knowledge of the receptacle involved. Secondly, the size and shape of a shaving kit more nearly resemble a briefcase than a suitcase. Thirdly, if expected privacy is argued, how can one say that a toothbrush deserves more privacy than one's personal papers carried in a briefcase? Finally, if personal luggage is to be afforded especial immunity not applied to other receptacles,

then surely the luggage should be in place where luggage is customarily kept—not secreted in the jack compartment of a vehicle.

Although this case can be affirmed by compliance with the law as last expressed by this court in the *Berry* case, I believe we unnecessarily stir muddy waters by attempting to make subtle distinctions in the type of receptable used to secrete contraband within an automobile. I would adopt a clear and reasonable position that can be understood by law enforcement officers and the public generally and one that is not based on the type of container harboring the illegal drugs. The rule adopted by this court on January 1, 1976, as Rule 12.4 of the Arkansas Rules of Criminal Procedure for Search and Seizure Incidental to Arrest should be *followed* by this court:

> (a) If, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search.

> (b) The search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

The pendulum has swung too far in protecting the rights of those accused of crime as compared to the rights of the public generally to be protected from criminal acts. In recent years, the appellate courts of this country seem to have been diverted from the ultimate question of guilt or innocence that should be the central concern in a criminal proceeding, but instead, have been almost consumed by a quest for technical error.

In *Stone* v. *Powell*, 428 U.S. 465, 490, 96 S. Ct. 3037, 3050, 49 L. Ed. 2d 1067, 1085 (1976), Justice Powell said:

Application of the [exclusionary] rule thus deflects the truthfinding process and often frees the guilty. The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice. Thus, although the rule is thought to deter unlawful police activity in part through the nurturing of respect for Fourth Amendment values, if applied indiscriminately it may well have the opposite effect of generating disrespect for the law and administration of justice. . . .

Mr. Justice Stone expressed my feelings in *McGuire* v. *United States,* 273 U.S. 95, 99, 47 S. Ct. 259, 260, 71 L. Ed. 556, 558 (1927):

[a] criminal prosecution is more than a game in which the Government may be checkmated and the game lost merely because its officers have not played according to rule. . .

The time has come to begin to pull the pendulum back toward center, and I would affirm the trial court.