Daniel Albert DAIGGER, Donna Sue DAIGGER,
& David Burl TAYLOR *v.* STATE of Arkansas

CR 80-31                                             595 S.W. 2d 653
Supreme Court of Arkansas
Opinion delivered March 17, 1980
Rehearing denied April 14, 1980

*McArthur & Lassiter, P.A.,* for appellants.

*Steve Clark,* Atty. Gen., by: *Dennis R. Molock,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. Daniel Albert Daigger, Donna Sue Daigger, and David Burl Taylor were convicted in Pulaski County Circuit Court of delivering LSD. Daniel Albert Daigger received a ten-year sentence. Donna Sue Daigger and Taylor received ten-year sentences with five years suspended. Their appeal raises three issues. First, they argue the trial court should have granted them a continuance so they could find and call as a witness, Jimmy Cahill, a police informant. Second, appellants argue the police illegally searched both the Daigger vehicle and Taylor. Third, Taylor alleges there was not enough evidence to convict him.

On appeal, the facts are not seriously disputed. Cahill introduced police undercover agents to Taylor at a bowling alley. The officers tried to buy some LSD from Taylor, but they could not agree on a price. Taylor took them to the Daiggers. A sale was made. Each of the Daiggers received $20.00. In response to a radio message from the officers making the purchase, another officer in the area arrested and searched Taylor shortly after the Daiggers left. In the meantime, a call was made to other policemen to stop the Daiggers' vehicle and arrest the Daiggers. They were arrested and their vehicle was searched. A search of Mrs. Daigger's purse, which was found between the front seats of the vehicle, uncovered LSD.

On the day the trial began, the appellants made an oral motion for a continuance to allow the State to furnish them Cahill's address. The trial judge denied the motion. We affirm his decision. A continuance need only be granted upon a showing of good cause. Rules of Crim. Proc., Rule 27.3. A denial of a continuance will not be reversed absent a clear abuse of discretion. *Russell & Davis* v. *State,* 262 Ark. 447, 559 S.W.2d 7 (1977). We find none here. The appellants knew Cahill's name and had ample opportunity, either through their own investigation or a specific discovery request, to find him before the trial began.

Neither do we believe the trial judge erred in admitting evidence, specifically the contents of Donna Sue Daigger's purse, found in the search of her vehicle. This kind of search is authorized by Rules of Crim. Proc., Rule 12.4:

> (a) If, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search.

> (b) The search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

The appellants, citing *Sanders* v. *State,* 262 Ark. 595, 559 S.W. 2d 704 (1977), aff'd 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979), argue the search of the purse violated the Fourth Amendment's prohibition of unreasonable searches and seizures. In *Sanders* we held a suitcase, which was seized from the locked trunk of a taxicab could not be searched. *Sanders* is not directly on point. The search here was of a purse found between the two front seats inside the vehicle. We compare this search favorably with a search which we upheld in the case of *Sumlin* v. *State,* 266 Ark. 709, 587 S.W. 2d 571 (1979). More importantly, we believe this particular search,

conducted immediately after the Daiggers had made an illegal drug sale to the officers, and made contemporaneously with their arrest, was not unreasonable.

We do not decide the propriety of the search of Taylor. The conduct ascribed to him simply cannot, under our cases, be considered delivery of LSD. We held in *Bowles* v. *State,* 265 Ark. 457, 579 S.W.2d 596 (1979), that a man who simply introduced the buyer to the seller was not guilty of delivery. The middle man must take a more active part to be a principal or even an accomplice. For example, in *Curry* v. *State,* 258 Ark. 528, 527 S.W.2d 902 (1975), the conviction of such an individual was upheld. There Curry took the money and returned with the drugs. Here we affirm the Daiggers' conviction but reverse Taylor's and dismiss the charges against him.

Affirmed in part; reversed in part.

PURTLE, J., concurs.

FOGLEMAN, C.J., and MAYS, J., dissent.

JOHN I. PURTLE, Justice, concurring. I concur with the majority completely as to the opinion as it relates to appellant, David Burl Taylor. I concur with the result as to the Daiggers but wish to state my reasons in slightly different terms.

First, the majority properly cites and interprets the Rules of Crim. Proc., Rule 12.4(a) and (b), for convenience to the reader is set out as follows:

> (a) If, at the time of the arrest, the accused is in a vehicle or in the immediate vicinity of a vehicle of which he is in apparent control, and if the circumstances of the arrest justify a reasonable belief on the part of the arresting officer that the vehicle contains things which are connected with the offense for which the arrest is made, the arresting officer may search the vehicle for such things and seize any things subject to seizure and discovered in the course of the search.

(b) The search of a vehicle pursuant to this rule shall only be made contemporaneously with the arrest or as soon thereafter as is reasonably practicable.

Daigger was in apparent control of the vehicle. The officers had reasonable belief that the vehicle contained things connected with the offense for which the arrest was made. The officers had paid for the LSD with marked bills, and they were in sight of the Daiggers until the arrest. The purse was in the passenger compartment of the vehicle in plain view of the arresting officers, and the search was made contemporaneously with the arrest. These facts fit squarely into the plain wording of the above rule.

In *Sanders* v. *State,* 262 Ark. 595, 559 S.W.2d 704 (1977) aff'd 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979), the suitcase searched was found in the trunk of the vehicle after the vehicle was parked. I believe both this Court and the United States Supreme Court held such a search was not a "vehicle exception" search. We recently reached the same result in *Moore* v. *State,* 268 Ark. 191, 594 S.W.2d 245 (1980), wherein we held a shaving kit located in a hidden place, which took about 20 minutes to locate, was not a search within the "automobile exception." In *Moore* the vehicle had been secured, and the accused was handcuffed and was in another vehicle at the time of the search. There were no exigent circumstances in either *Sanders* or *Moore.*

In the present case, the officers had concrete facts to base their belief that this vehicle contained not only the marked money but also additional LSD. The present case is similar to the fact situation in *Sumlin* v. *State,* 266 Ark. 709, 587 S.W.2d 571 (1979), in which there was a very dangerous fact situation confronting the officers. Also, the purse was in the passenger compartment of the vehicle in plain view of the officers.

It appears to me when the search of an automobile is contemporaneous with the arrest and the arresting officers have facts upon which to reasonably believe things connected with the offense are contained in the passenger compartment of the vehicle, the officers are authorized to look into the vehi-

cle. If the things which they have probable cause, based upon facts known to them, to believe are in the vehicle are seen by them, the search is reasonable. However, when the vehicle is secured or the container to be searched is within the exclusive control of the arresting authorities and there are no exigent circumstances and no danger of harm to anyone or loss of the items sought, a warrant is required. If this reasoning is applied, I do not see any conflict between *Sanders,* supra, *Moore,* supra, and the case before us.

For the above reasons I concur with the majority opinion.

JOHN A. FOGLEMAN, Chief Justice, concurring in part, dissenting in part. It is extremely hard to have any sympathy for a "dope peddler." That is not what is involved here. The very foundation of this nation rests upon the theory of equality before the law. This theory has been engraved in our constitutions. Constitution of the United States, Amendment Fourteen; Constitution of Arkansas, Art. 2, §§ 2 and 3. The principle was stated in our constitution of 1868, which became effective before the Fourteenth Amendment to the United States Constitution was declared to have been ratified. If equality before the law is to be meaningful, or actually if it is to be preserved, the "dope peddler" must be afforded the same constitutional protections available to citizens in the highest and most respected positions. Otherwise, erosion will wash the principle away, just as it will eventually wash away the hardest stone.

A basic constitutional right is the right to be free from unreasonable searches and seizures. Constitution of the United States, Amendment Four; Constitution of Arkansas, Art. 2, § 15. The provisions are stated in identical language, i.e., "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, . . ." It is notable that the right is not restricted to some people or to law-abiding people. It is also significant that all people, including law violators, have the same right to be secure in their effects as they have in their persons and in their homes. See *State* v. *Porter,* 53 Ohio Misc. 25, 373 N.E.2d 1296 (1977). Donna Sue

Daigger had the right to be secure in her person and effects against an unreasonable search. And the Fourth Amendment protection is broad enough to afford protection to contraband. *United States* v. *Peisner,* 311 F.2d 94, 5 ALR 3d 1196 (4 Cir., 1962).

There is a rebuttable presumption that a search without a warrant is an unreasonable search. *Sanders* v. *State,* 262 Ark. 595, 595 S.W.2d 704, aff'd. sub nom. *Arkansas* v. *State,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235. The burden is upon the state to show that a search without a warrant was reasonable. *Rowland* v. *State,* 262 Ark. 783, 561 S.W.2d 304; *Asher* v. *City of Little Rock,* 248 Ark. 96, 449 S.W.2d 933. This means that the state must show by a preponderance of the evidence that the facts and circumstances surrounding the search brought it within the scope of a recognized exception to the requirement of a warrant for a search or seizure. See *Rowland* v. *State,* supra. The majority seeks to justify this search as a lawful search incident to an arrest, equating it with an automobile search. It was not an automobile search. The only question before us is the validity of the search of Donna Sue Daigger's purse. *Sanders* v. *State,* supra. In *Sanders,* we said:

> To paraphrase the United States Supreme Court's observation in *United States* v. *Chadwick,* [433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977)] supra, the factors which diminish the privacy aspects of an automobile do not apply to appellant's suitcase. Luggage contents are not open to public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile.

> Nor does the suitcase's mobility justify dispensing with the added protections of the Warrant Clause. Once the Little Rock police had seized appellant's suitcase from the trunk of the taxicab and had the suitcase under their exclusive control, there was not the slightest

danger that the suitcase or its contents could have been removed before a valid search warrant could be obtained. The initial seizure of appellant's suitcase, the validity of which appellant does not contest, was sufficient to guard against any risk that evidence might be lost. With the suitcase safely immobolized, it was unreasonable to undertake the additional and greater intrusion of a search without a warrant.

Detectives Sylvester and Hutchinson stopped the Daigger vehicle, at the behest of Detective Fulks, at or near the Crestwood Apartments in Little Rock. Although there was some pretense of arresting Fulks and Detective Lowery, they were present at the scene of the arrest. The vehicle was a van. Sylvester searched both Daiggers. In searching the vehicle, Sylvester found Mrs. Daigger's pocketbook or wallet. It was lying on the console between the driver's seat and the passenger's seat. He took some money, the serial numbers of which corresponded with that used by Fulks and Lowery in making the purchase from the Daiggers. He took some LSD from the wallet. According to Sylvester, the Daiggers "were clearly under police control" at the time he searched the van. There was simply no evidence of any exigent circumstances.

Neither the existence of probable cause nor the reasonableness of the search itself is a substitute for a warrant where a reasonable expectation of privacy is invaded by the search, at least in the absence of exigent circumstances. *Arkansas* v. *Sanders,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235. See also, *Freeman* v. *State,* 258 Ark. 617, 527 S.W.2d 909. The basic and essential purpose of the requirement of a search warrant is to protect the individual against unreasonable governmental intrusions into his privacy, whenever and wherever his expectation of privacy is legitimate. *Hosto* v. *Brickell,* 265 Ark. 147, 577 S.W.2d 401. One of the most important factors to be considered in determining the reasonableness of a search is the existence, extent and legitimacy of the citizen's right to privacy under the circumstances. *Hosto* v. *Brickell,* supra.

We have recognized *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685, rehearing denied, 396 U.S. 869, 90 S. Ct. 36, 24 L. Ed. 2d 124 (1969), as the leading guideline

provided by the United States Supreme Court on the permissible scope of a search incident to a lawful arrest. See *Steel* v. *State,* 248 Ark. 159, 450 S.W.2d 545. According to that guideline, the search incident to a lawful arrest cannot go beyond that area from which the arrested persons might have obtained a weapon or destructible evidence. *Freeman* v. *State,* 258 Ark. 617, 527 S.W.2d 909, *Steel* v. *State,* supra; *Moore* v. *State,* 261 Ark. 274, 551 S.W.2d 185. In *Shingleton* v. *State,* 39 Md. App. 527, 387 A. 2d 1134 (1978), a case strikingly similar to both this case and *Sanders,* the Maryland court put the impact of *United States* v. *Chadwick,* 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977) in proper perspective. That court said:

> When the van was stopped by the police, the occupants were removed from the vehicle and placed under arrest. A quick warrantless search was conducted on the spot. The State Police discovered the briefcase and opened it. As we read *Chadwick,* the contents of the brief case were protected by the cloak of the Fourth Amendment. Plainly, a briefcase is more like luggage, about which *Chadwick* holds that one has a right of expectation of privacy, than like a motor vehicle, a highly mobile object, usually open to view and in which one may reasonably expect less privacy. Moreover, there is no testimony of any emergency requiring the warrantless search of the briefcase. The officers did not express any fear or apprehension over weapons or explosives. The only remaining justification for the intrusion into the briefcase was the possibility that the contents would be destroyed by the two (2) appellants who were arrested at the scene. Those two (2), Martin and Shingleton, were in custody and, inferentially, unable or incapable of destroying the briefcase's contents. The sum and substance of the facts being that, in this case, no justification existed for the warrantless search of the briefcase. *Chadwick* v. *United States,* supra; *Preston* v. *United States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964).
>
> We are mindful of a number of cases seeming to justify such a search as that present in this matter on the theorem of search incident to an arrest. *Cady* v. *Dum-*

*browski,* 413 U.S. 433, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Chambers* v. *Maroney,* supra; *Chimel* v. *California,* 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969). See also *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Mobley* v. *State,* 270 Md. 76, 310 A.2d 803 (1973), aff'd. *King* v. *State,* 16 Md. App. 546, 298 A.2d 446 (1973). The rationale for upholding warrantless searches made incident to arrest is the safeguarding of the arresting officers or preventing the loss of evidence. That proposition evaporates in view of the separation of the briefcase from the arrestees. Because, in the case *sub judice,* the clear and present danger to the police and the likelihood of destruction of the evidence were dispelled by the separation of the appellants, Martin and Shingleton, from the van and, obviously, from the briefcase, there was no need for a warrantless search of the briefcase. *United States* v. *Chadwick,* supra; *Preston* v. *United States,* supra.

Under the circumstances of this case, the police should have obtained a search warrant before opening and searching the briefcase, and the trial court erred in admitting the contents of the case into evidence.

Although there was ample authority, as Mr. Justice Blackmun observed in his dissent in *Chadwick,* for the position that a briefcase in a car may be searched as part of the "automobile exception" expounded by *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); see e.g., *United States* v. *Tramunti,* 513 F.2d 1087 (2d Cir. 1975) (suitcase in back seat of a car); *United States* v. *Issod,* 508 F.2d 990 (7th Cir. 1974), cert. denied, 421 U.S. 916, 95 S. Ct. 1578, 43 L. Ed. 2d 783 (1975) (trunk in railroad station); *United States* v. *Soriano,* 497 F. 2d 147 (5th Cir. 1974) (en banc) (suitcases in trunk of taxicab); *United States* v. *Evans,* 481 F.2d 990 (9th Cir. 1973) (footlocker in trunk of automobile), nevertheless, to the extent those cases conflict with *Chadwick,* they are implicitly laid to rest. The law is now clear that the police, having gained "exclusive control" of the briefcase and eliminated by space and time any possibility of the arrestee's "gain[ing] access to the property to seize a weapon or

destroy evidence," may not then conduct a warrantless search of that property under the guise of a search incident to the arrest. *United States* v. *Chadwick,* 433 U.S. at 15, 97 S. Ct. at 2485, 53 L. Ed. 2d at 551; *Preston* v. *United States,* supra. Hence, the briefcase and its contents should have been suppressed and it is reversible error for the trial judge not to have excluded that illegally seized evidence.

This case is virtually identical to *Sanders* v. *Arkansas,* supra, aff'd. as *Arkansas* v. *Sanders,* supra, in that the police were in control of the automobile and its occupants and there was no danger that the pocketbook (rather than suitcase) or its contents would be rendered unavailable to due legal process. Here, as there, the police were justified in stopping the automobile, searching it and seizing the pocketbook. The question here, as there, was whether the police, rather than searching the pocketbook without a warrant, should have taken it to the police station, where they were taking the persons arrested anyway, and there obtained a warrant to search it. The pocketbook was in the exclusive control of the police. Its mobility was destroyed by its seizure. The appellants had only a slightly better chance of retrieving the pocketbook and destroying the incriminating evidence than any member of this court did.

Any person who has ever observed or participated in the emptying of a pocketbook could not escape the conclusion that the expectation of privacy in that personal effect was very great indeed. In *Sanders,* the United States Supreme Court had this to say on the subject:

> Not all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar's tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. ***

We have heretofore recognized that there are containers

in which the owner does not have an expectation of privacy when we held that a toolbox was one, because it is not a repository of personal effects. *Wyss* v. *State,* 262 Ark. 502, 558 S.W.2d 141. There is a lot of difference between a toolbox and a pocketbook. It seems to me that one would expect more privacy in his pocketbook than in either his luggage or his toolbox. Certainly a pocketbook is a repository of personal effects.

I distinguish the circumstances here from those in *Sumlin* v. *State,* 266 Ark. 709, 587 S.W.2d 571. Ruth Sumlin had effected a jailbreak at 10:00 p.m. one evening, forcing a jailer to release five prisoners, among which was her husband, at the point of two weapons, a pistol and a knife. Thus, it was known that she was armed. She later fired a weapon at two of the escapees who had left the jail with her and her husband. She surrendered to the police by leaving the automobile her husband was driving and running to a police car. Her purse was seized at the time of her arrest and taken to the jail where she was held. Both the policeman arresting Ruth Sumlin and the Chief of the Fordyce Police in whose custody she was placed, looked in the purse for weapons. Sheriff Joe Pennington, to whose custody she was transferred early in the morning after the escape, properly inventoried the contents of the purse. He found a knife, the murder victim's billfold and an incriminating letter. The knife had apparently been found by the police officers who first looked into the purse, and it was readily visible and its presence known. The sheriff opened the letter in order to try to get information concerning the whereabouts of the other escapees.

The lone police officer who made the arrest there did not have control of the situation as the police did here. As a matter of fact, Ruth Sumlin's husband tried to escape after the vehicle he was driving had been stopped by the police officer. He rammed the policeman's car with the stolen automobile he was driving and had to be subdued. The officer's opening the purse to search for weapons was, under the circumstances, an act of wisdom and justified as incident to the arrest. It must be remembered that three of the escapees were unaccounted for after the Sumlins had been arrested. A search of the purse for weapons at the Fordyce jail

where she was taken was proper, even if the chief of police did not make an inventory. The sheriff was much concerned about the whereabouts of the other escapees and was justified in considering the situation as an emergency. When the circumstances of the arrest, the taking of custody at places of incarceration, the propriety of an inventory by the sheriff and the exigencies of the situation are considered, the search of the purse there was justified. None of these conditions existed in this case.

I would reverse the judgment as to Donna Sue Daigger, but I agree that the judgment should be affirmed as to Daniel Albert Daigger and reversed as to Taylor.

I am authorized to state that Mr. Justice Mays joins in this opinion.