RONALD STEEL, CARSON STEEL, JR. AND DORIS STEEL *v.*
STATE OF ARKANSAS

5467                                        450 S. W. 2d 545

Opinion delivered March 2, 1970

*John B. Hainen,* for appellants.

*Joe Purcell,* Attorney General, for appellee.

John A. Fogleman, Justice. Appellants were convicted on May 1, 1968, of robbery of the Bank of Lockesburg on September 27, 1967. The conviction was affirmed on appeal. See *Steel* v. *State,* 246 Ark. 75, 436 S. W. 2d 800. Thereafter, we granted appellants permission to seek postconviction relief under Criminal Procedure Rule 1 with respect to the validity of searches made of a pickup truck and a Pontiac automobile. Ronald Steel and Carson Steel, Jr., were occupants of the pickup truck, and Doris Steel was the sole occupant of the automobile when they were arrested on the day of the robbery.

The circuit court denied relief after a hearing on August 12, 1969. It was conceded by the state that search warrants issued for a search of these vehicles after they had been brought from the places of arrest to the scene of the crime were invalid. The ruling of the circuit judge was that the searches were valid as reasonable searches incident to a lawful arrest. Appellants' argument that the searches were unreasonable under constitutional standards seems to be based upon these contentions: first, there was no probable cause for their arrests; second, the extent of the search at the time and place the male petitioners were taken

into custody went beyond constitutionally permissible bounds; and, lastly, that the search of the vehicles at the bank was too remote in time and place from the arrests to be reasonable without authorization by valid warrants.

Taking these points in the order stated, we find no merit in the first. On this point, little, if anything, was revealed in the postconviction hearing that was not in evidence during the trial.[1] The trial judge held that the arrest of the two male appellants was lawful and cited the opinion of this court on direct appeal. As to these appellants, the question was fully considered on the prior appeal and no new argument is advanced on this appeal. We reaffirm our former holding as to the legality of these arrests.

While the legality of the arrest of Doris Steel was not specifically treated in the opinion on the first appeal, the disposition we make of this appeal makes a review of the circumstances of this arrest unnecessary.

Directing attention to the search of the pickup truck at the scene of the arrest, we again find that it was a search incident to a lawful arrest and not constitutionally unreasonable. The sheriff who made the search had apprehended three men after a hot pursuit which led to an apparently obscure, little-used, dead-end road. The officer was alone with three men who, as we found in the original opinion, he had reason to believe had participated in the armed robbery of a bank. He was confronted with the problem of taking and holding them in custody and returning them to the scene of the crime and ultimately to the county jail. It was reasonable to believe that the participants in the bank robbery would have weapons and evidentiary material under their control. Even though he was armed with a rifle, a daring attempt to escape of at least one of the three persons he had apprehended was

---

[1] For this reason, we will avoid repetition of all the facts stated in the opinion on direct appeal.

certainly a possibility a 'prudent officer would consider. Any diversionary action by one might well permit another to obtain weapons or even to try to escape in the truck. According to Bradshaw, one of the Steels was not very submissive to arrest. He said that after the sheriff had told the three men to lie on the ground, he had to tell this one two or three times to "lay down" or he (the sheriff) would "put him down." The pickup truck with its contents presented a hazard to the officer and to his ability to maintain his detention of the arrested persons and to seize any evidence connecting them with the crime before it could be removed. If he succeeded in taking all his prisoners away from the scene, there remained the possibility that one would escape, return and remove the pickup truck and its contents. There also remained the possibility that a confederate of the persons arrested would manage to remove this truck or its contents after he left the scene and before he or a person delegated by him could return for the vehicle with or without a search warrant. The only assistance available to him was that of Bradshaw, which he promptly enlisted. It does not appear that Bradshaw had ever been a police officer. He simply happened to reside near the "dead-end" of the flight of the Steels and their companion. While he proved to be entirely trustworthy, Bradshaw's ability to control the arrestees for any period of time was not to be taken for granted. Bradshaw testified that the sheriff warned him to be careful.

Hilton had also found it necessary to leave Doris Steel, who he had a right to believe was a confederate, in the custody or under the surveillance of an impressed citizen. He could not be sure of her whereabouts or activities. An immediate search of the pickup truck for weapons and evidentiary material was clearly indicated.[2] It and its contents were certainly under the

---

[2]Sheriff Hilton managed to return appellants and their companion to Lockesburg in the rear of a pickup truck owned by Bradshaw, and driven by him, with the sheriff following in his automobile, leaving the searched pickup truck at the place of arrest.

immediate control of those persons when arrested. A failure to search the vehicle at this time and place under the prevailing circumstances would have been foolhardy and a dereliction of duty on the part of the officer. The only articles taken from the vehicle at this time were two loaded pistols. Even though Ronald Steel testified that Sheriff Hilton went upon the bed of the truck and took clothing and "guns" from a box and proceeded to search in the glove compartment and under the "dash" and the "back" seat in the cab, and Carson Steel, Jr., stated that the loaded pistols removed by the sheriff were not in plain view but concealed under articles of clothing in a box, we find that this search was not beyond the permissible scope of a search incident to a lawful arrest. The opinion in *Chimel* v. *California*, 395 U. S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), rehearing denied 396 U. S. 869, 90 S. Ct. 36, 24 L. Ed. 2d 124 (1969),[3] appears to be the latest guideline provided by the United States Supreme Court in this field. According to the holding there, the search incident to a lawful arrest could not have gone beyond the area from which the arrested persons might have obtained weapons or other things which may have been used to effect an escape or which could have been used as evidence against them. Even when we give appellants' testimony its strongest probative force, this search was not unreasonable as incidental to a lawful arrest.

Neither was that search unreasonable as the search of an automobile under the special considerations giving rise to more lenient standards on account of vehicular mobility. Even though the United States Supreme Court in *Chimel* has restricted automobile searches to some extent, as will be presently pointed out, it has clearly recognized the validity of searches of automobiles without warrants when probable cause exists and it is not practicable, because of mobility of the vehicle, to secure a search warrant. In *Chimel*, the

---

[3]There has been no suggestion that this decision is not applicable the searches involved in this case.

court clearly states that its holding is consistent with those principles stated in *Carroll* v. *United States,* 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925) and *Brinegar* v. *United States,* 338 U. S. 160, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949).

Yet, we are unable to agree with the circuit court that the search of the vehicles at the bank was within constitutionally permissible bounds as incident to the arrest or otherwise. The state conceded at the hearing on appellants' petition that the warrants for these searches were invalid. Here again, we must turn to the *Chimel* case for guidance. While a dwelling house search was involved there, the court quoted from and relied upon principles stated in *Preston* v. *United States,* 376 U. S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777 (1964), where an automobile search was involved. There it had been said that justification for vehicular searches contemporaneous with arrests was absent where ·the search is remote in time and place from the arrest. We take this to be the standard to be applied to the searches of these vehicles at the scene of the crime.

When Doris Steel was taken to the bank at Lockesburg by Graves, a private citizen in whose custody the sheriff had left her, the vehicle in which she was found was left on the road where Sheriff Hilton first saw her. It was locked before they left it, and the keys retained by Mrs. Steel. This point was about three miles from Lockesburg. The record showed that Graves delivered Mrs. Steel to Sergeant Page of the Arkansas State Police. The point at which Ronald Steel and Carson Steel, Jr., were arrested was four and one-half to five miles from Lockesburg. Sheriff Hilton, Bradshaw and the three persons arrested left this place about 15 minutes after the arrest. It took about 15 minutes for Sheriff Hilton to take the occupants of the pickup truck to the bank, where he found Sergeant Page of the Arkansas State Police and Agent Rawlings of the Federal Bureau of Investigation. Other officers were also present. Graves went to the bank after he turned Mrs. Steel over to Sergeant Page and remained there some 15 to

20 minutes. He was there when Sheriff Hilton arrived, but was not aware of the search of any vehicles there. Bradshaw testified that Sheriff Hilton left the bank with one. Billy Coulter to get the pickup truck approximately one hour after Hilton and Bradshaw left the place of arrest with the Steels and their companion. Sergeant Page testified that, immediately after arrival at the bank, the sheriff sent someone after the Pontiac. These searches of these vehicles were not made until the search warrants now conceded to be invalid had been obtained. They must have been conducted at least an hour after the arrests were made.

Perhaps there is no area in which the task of trial judges has been more onerous than this which requires them to accurately follow the decisions of the United States Supreme Court setting out standards to be applied in determining the reasonableness of searches under Fourth Amendment prohibitions. The pendulum-like swings of the decisions on these standards were traced in *Chimel.* The trial judge's holding in this case is based upon the five-four decision in *Cooper .v. California,* 386 U. S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730 (1967). There a warrantless search of a motor vehicle was upheld. It took place one week after the arrest. It was conceded that the search was not incident to the arrest. The arrest was for violation of the California narcotics law. California statutes required any officer making an arrest for a narcotics law violation to impound any vehicle used to store, conceal, transport, sell or facilitate the possession of narcotics, and to hold it as evidence until a forfeiture was declared or release ordered. The majority said that the search was reasonable because of its close relationship to the reasons for the arrest and impoundment and retention of the automobile. Great reliance was placed upon the holding in *United States* v. *Rabinowitz,* 339 U. S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950), that the test of a warrantless search was whether the search was reasonable, rather than whether it was reasonable to procure a search warrant. *Rabinowitz* was criticized and substantially overruled in *Chimel.* The court more

nearly followed Mr. Justice Frankfurter's dissent in *Rabinowitz,* where he said that the majority had left no criterion for determining reasonableness. *Rabinowitz* had overruled the rule stated in *Trupiano* v. *United States,* 334 U. S. 699, 68 S. Ct. 1229, 92 L. Ed. 1663 (1948), that law enforcement officers must secure and use search warrants whenever reasonably practical. The court clearly seems to have returned to its *Trupiano* position, at least insofar as a search incident to an arrest is concerned.

In a footnote to the majority opinion in *Chimel* it is plainly suggested that *Cooper* was decided in reliance upon *Rabinowitz.* Certainly it is made clear in *Chimel* that the United States Supreme Court will henceforth not permit the scope of a warrantless search to go beyond the reasons for which such a search is permitted. Full recognition is given to the principle that a warrantless search of an automobile is permissible when probable cause exists and the mobility of the vehicle makes the securing of a search warrant impracticable. The decision in *Chimel* leaves this as the only test which can be applied in this case. While there is no doubt as to the existence of probable cause, the searches of the vehicles at the bank were too remote in time and place to be reasonable as incident to the arrests, and it was not shown that it was not practicable to obtain search warrants or that there was any likelihood that the vehicles would be removed out of the locality or jurisdiction in which the warrant must be sought after they had been brought to the bank. The state's burden in this regard was virtually insurmountable in view of the fact that no search was attempted until after the invalid warrants were secured.[4] We are not confronted with the situation that would have existed had the vehicles been taken to the bank along with the arrested persons and immediately searched upon arrival there.

---

[4]As to burden of proof see *Peters* v. *State,* 248 Ark. 134, 450 S. W. 2d 276.

We are not aware of any statutory or common-law duty of officers to impound vehicles in which persons suspected of bank robbery are found when apprehended. On oral argument, the assistant attorney general admitted that he had been unsuccessful in a search for authority supporting this view. It might well be that the officers would have such duty if the vehicle had been found abandoned at the scene of the crime, if the vehicle were one described as having been occupied by the persons who robbed the bank either when they came to or left the bank, or if the vehicle had been stolen. Such is not the case here. Nor is it shown that the searches were made for the purpose of making inventories for the protection of parties responsible for the vehicles. They were obviously made for fruits of the crime, instrumentalities used in perpetration thereof or evidentiary material. Under all of the circumstances existing here, we think current Fourth Amendment criteria for searches and seizures required search warrants for these vehicles.

The circuit judge also made a finding that it is clear beyond a reasonable doubt that the result would have not been changed had the fruits of these searches been excluded. The United States Supreme Court has, on occasion, recognized a harmless-constitutional-error rule in cases wherein the court could declare a belief that the error was harmless beyond a reasonable doubt. *Chapman* v. *California*, 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967).

We are unable to agree with the trial judge that there is no reasonable doubt of the conviction of appellants without the evidentiary material discovered and seized as a result of the vehicular search at the bank. It seems clear to us that the lady's stocking found in the Pontiac was a ctitical bit of evidence against appellants, particularly Doris Steel, as will be seen by examination of our opinion on direct appeal. The importance of the handkerchief and pillow case found in the pickup truck was also emphasized in that opinion when we determined the sufficiency of the evidence to

support the jury verdict. We are unable to say without reasonable doubt that a conviction would have resulted without the fruits of the illegal search.

After oral argument and submission of this appeal, appellants have filed an amendment to their petition under Criminal Procedure Rule 1. We have given no consideration whatever to this amendment in arriving at our decision which was actually arrived at before the amendment was filed. The allegations of this amendment relate to what is purportedly newly discovered evidence. The scope of the hearing permissible was clearly defined in the order of this court granting appellants permission to proceed under this rule. Matter alleged in that amendment is clearly without the scope of the Rule 1 permission granted. It is not only outside the permissible scope of the issues in this proceeding, but is clearly outside the scope of post-conviction relief allowable under Criminal Procedure Rule 1. Furthermore, this is not a court of original jurisdiction in these matters. The filing of an amended petition on appeal is unknown to our procedure. There is no prejudice, however, to the right of appellants to produce any admissible evidence available to them upon a new trial, whether it was discovered before or after the former trial.

Reversed and remanded for a new trial.