Charles TILLMAN and Charles HUGGINS
*v.* STATE of Arkansas and
Leandrew BYRD, Jr. *v.* STATE of Arkansas

CR 81-47                                        630 S.W. 2d 5

Supreme Court of Arkansas
Opinion delivered March 8, 1982
[Rehearing denied April 12, 1982.*]

*HOLT, HICKMAN, and DUDLEY, JJ., would grant the petition.

*Brown & Kesl, P.A.,* by: *Marjorie M. Kesl,* for appellant Byrd.

*McArthur & Lassiter, P.A.,* by: *William C. McArthur,* for appellants Tillman and Huggins.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Judge. Appellants were convicted of theft of property and burglary of a residence in Lonoke County, receiving concurrent ten year sentences on each charge. For reversal, they allege the trial court erred in not suppressing evidence seized without a warrant, in not permitting the introduction of statements elicited from them by the police, and in permitting a police officer to give opinion testimony. We find no error.

The facts given us are that shortly after noon on February 4, 1980, a private citizen followed the three appellants from North Little Rock to near Scott, a distance of about 15 miles, and watched them slow down and scrutinize residences along the way. He formed the belief that they were "casing" the residences for a burglary, particularly one at the intersection of Highway 130 and Walker's Corner Road. Leaving his own pursuits, he drove to the police station at England where he reported the information to Deputy Sheriff Alan Swint. Mr. Swint knew the location to be sparsely settled, to have been subjected to a rash of recent burglaries and knew the residence of George Brown to be at that point. Appellants' car, a bronze Cadillac, was unfamiliar to him. Swint went directly to the scene where he saw the Cadillac stopped, but positioned diagonally across the highway in such a manner as to suggest having just backed from the Brown driveway. Swint radioed another officer to investigate the residence as he followed the appellants. In North Little Rock he signalled another police vehicle to assist him and with that help he stopped the occupants and told them they were being held for suspicion of burglary. After handcuffing the appellants he received a radio report that the Brown residence had, in fact, been burglarized. With that information, he opened the trunk and observed two garment bags. One, he maintains, was partially opened, enabling him to see articles of silver service. On those facts appellants' motion to suppress was denied.

## I.

Appellants maintain the initial stop and detention was an unlawful arrest and seizure and there was no probable cause for the search. We disagree.

Our Rule of Criminal Procedure 3.1 gives a police officer the right to stop and detain for up to 15 minutes[1] any person he reasonably suspects has committed a felony. Rule 2.1 defines the test as more than an imaginary or purely conjectural suspicion, but less than probable cause. Even the

---

[1] Time is not an issue here and presumably the stop had not exceeded 10 to 15 minutes when the suspected burglary was confirmed.

higher standard of probable cause requires much less than a certainty, as it is said to exist simply if the circumstances known to the officer would warrant a prudent man in believing a suspect had committed a crime. *Henry* v. *United States*, 361 U.S. 98 (1958); *Giordenello* v. *United States*, 357 U.S. 480 (1959). It does not depend on the same type of evidence as would be needed to support a conviction. *Draper* v. *United States*, 358 U.S. 307 (1959).

Hence, these considerations are relative, and can be compared to a ladder with four rungs: at the highest level is certain knowledge, as in the case of an eyewitness to a crime; next is probable cause, less than a certainty, but enough to satisfy a prudent man; lower yet is a reasonable suspicion; and at the lowest level, a bare or imaginary suspicion, founded on nothing more than a hunch. Applying that standard to this case, we regard the requirements of reasonable suspicion as having been fully satisfied.

To validate this conclusion one need look no farther than the landmark decision of the United States Supreme Court in *Terry* v. *Ohio*, 392 U.S. 1 (1968). The circumstances of that case provide a striking analogy to this case. Terry had appealed a conviction for carrying a concealed weapon. He was observed by a detective about 2:30 one afternoon. The officer's interest in Terry and two companions was aroused because they walked back and forth in a particular block peering in a store window and then conferring at the corner. The officer became suspicious and believed the men were "casing" the store for a robbery. He approached the men, identified himself as a police officer, and asked for their names; he was not acquainted with any of the three by name or sight and had received no information concerning them from any source. When the men "mumbled something" in response to his question the officer grabbed Terry, "spun him around" to frisk him and found a pistol in his overcoat pocket. The Supreme Court of the United States, whose sensitivity to Fourth Amendment constraints needs no defense, affirmed a decision of the Supreme Court of Ohio that the revolver was properly admitted in evidence, holding that the officer had reasonable grounds to believe that Terry was armed and dangerous and that his behavior justified an

investigative stop. The court noted that the suspects had gone through a series of acts, while innocent in themselves, when taken together warranted further investigation. And while the officer could not rely entirely on his intuition, he could draw on his experience in observing people under a variety of circumstances. The cases are rationally indistinguishable. A similar holding was reached in *Adams v. Williams,* 407 U.S. 143 (1972).

In *United States v. Brignoni-Ponce,* 422 U.S. 873 (1975), the court dealt with the problem of the United States Border Patrol's authority to stop automobiles near the Mexican border. Referring to *Terry v. Ohio,* the court said:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response . . . *A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.* (Emphasis supplied.)

In *Reid v. Georgia,* 448 U.S. 438 (1980), *Terry v. Ohio* was described as holding that conduct *lawful in itself* can be such as to arouse a reasonable suspicion when viewed by a trained police officer.

In *United States v. Cortez,* 449 U.S. 411 (1981), the court observed that while trained police officers are able to draw inferences and make deductions that might well elude others, in the final analysis investigatory stops must be justified by some objective manifestation that the person is engaged in criminal activity. Noting that *the whole picture* must be considered the court said:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated

certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same — and so are law enforcement officers. *Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.* (Emphasis supplied.)

In this case the objective manifestations are found in the fact that the suspects were followed a considerable distance and observed to study residences along the way as if to be "casing" them; coupled to those circumstances are the knowledge and observations of Officer Swint that the area had been frequently burglarized, that the vehicle was unfamiliar to him, the occupants unknown to him and were thought to have just emerged from the Brown driveway 45 minutes to an hour after the informant observed them "casing" the residence. Singly, those circumstances indicate nothing; collectively, they add up to a reasonable suspicion. The case may be stronger than *Terry* v. *Ohio* — stores and store windows, unlike private homes, are intended to attract scrutiny. We conclude that the initial stop of the appellants was based on reasonable suspicion and hence not a violation of the Fourth Amendment.

The second phase of appellants' argument is that the warrantless search of the automobile was a violation of the Fourth Amendment. But we believe the search comes within the "automobile exception" announced in *Carroll* v. *United States*, 267 U.S. 132 (1925). The State does not contend the search was incidental to a lawful arrest (assuming appellants' detention amounted to an arrest), as such searches are restricted to the passenger compartment of the vehicle. *New York* v. *Belton*,[1] 450 U.S. 1028 (1981). What is claimed, correctly we think, is that when Officer Swint learned the Brown residence had been burglarized, at that point he had probable cause to believe the vehicle contained evidence of the crime and, hence, a search of the vehicle was

---

[2]Where it was held that "when a policeman has made a lawful custodial *arrest* of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."

proper. Rule 14.1 (a), A. R. Crim. P., gives an officer the right to make a warrantless search of a vehicle detained on a public way if he has reasonable cause to believe the vehicle contains evidence subject to seizure, and exigent circumstances require immediate action to prevent removal or destruction of such evidence. Rule 14.1 is consistent with *Carroll* v. *United States,* in permitting search and seizure whenever "probable cause to believe that the area contains evidence of a crime conjoins with any exigency arising out of the mobility and imminent disappearance of that same constitutionally protected area."[3] See also *Chambers* v. *Maroney,* 399 U.S. 42 (1970).

Appellants cite *Burkett* v. *State,* 271 Ark. 150, 607 S.W. 2d 399 (1980), and *Scisney* v. *State,* 270 Ark. 610, 605 S.W. 2d 451 (1980). where we held a warrantless search of wrapped parcels and suitcases was improper. But the distinguishing aspect is that in those cases the initial arrest was due merely to a faulty tail light and there was a lack of probable cause to believe the vehicles contained marijuana.

Appellants also press the argument that the garment bags were closed and, hence, under the "suitcase doctrine" there was an expectation of privacy in such containers, as recognized in *Arkansas* v. *Sanders,* 442 U.S. 753 (1979), and *United States* v. *Chadwick,* 433 U.S. 1 (1977). But that fact issue was disputed and the trial court apparently relied on the officer's testimony that one of the garment bags was open and its contents clearly visible to him. Had the garment bags been closed, then the rationale of the suitcase doctrine might arguably apply on the theory that when the suspects and the containers are in custody, exigent circumstances disappear and a warrant can be sought at leisure. But even that is a debatable point, as the language of footnote 13, page 764, *Arkansas* v. *Sanders, supra,* suggests:

> Not all containers and packages found by police during the course of a search will deserve the full protection of

---

[3] "The Automobile Exception: What It Is and What It Is Not — A Rationale in Search of a Clearer Label" by Judge Charles Moylan, 27 Mercer Law Review 987 (1975).

the Fourth Amendment. Thus, some containers (for example a kit of burglar rools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred by their outward appearance.

Appellants argue inferentially that exigent circumstances disappear when the suspects and the vehicle itself are in custody, but that is not the law and, if reason prevails, will not become the law. Containers the size of suitcases can be readily secured in police custody but the impracticality of securing an automobile is self-evident, as the United States Supreme Court noted in *Chambers* v. *Maroney, supra,* where the court reviewed the automobile exception:

> *Carroll* v. *U.S.* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible. (Page 51.)

This is not to deny the existence of that school of cases which has barred a warrantless search of automobiles where both the suspect and the vehicle are in custody. (See *Jenkins* v. *State,* 253 Ark. 249, 485 S.W. 2d 541 (1972), *Steel* v. *State,* 248 Ark. 159, 450 S.W. 2d 545 (1970), *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971), *Preston* v. *United States,* 376 U.S. 364 (1963).) But those decisions distinguish a search at the scene of arrest as opposed to a search remote in *time* and *distance* from the situs of the arrest, under circumstances more conducive to the securing of a search warrant. We think the trial court correctly denied the motion to suppress.

## II.

Secondly, appellants ascribe error to the refusal to allow the introduction of statements elicited from them by the police. Although appellants declined to testify, they sought to introduce statements each had given the police after their arrest. The statements claimed they had bought the articles

(consisting of a mink coat and an estimated $20,000.00 worth of silver service) for $300.00 from two men they met that morning at a McDonald's restaurant and known to them only as Larry and Mike. The statements were offered as an admission against penal interest, under Rule 804 (b) (3), Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1001 (Repl. 1979), on the theory that the statements exposed them to a charge of receiving stolen property. Before statements against penal interest are admissible under Rule 804 the court must be satisfied that the corroborating circumstances clearly indicate the trustworthiness of the statement. See *Welch* v. *State*, 269 Ark. 208, 599 S.W. 2d 717, cert. den. 449 U.S. 996 (1980). The circumstances surrounding these statements fail decidedly to meet that test and the trial court was right to exclude them.

## III.

Finally, appellants contend that the court erred in allowing the deputy to give an opinion that the Cadillac had backed from the Brown driveway just before he saw it. Rule 701, Uniform Rules of Evidence, allows a lay witness to state an opinion if it is rationally based on his perception and would be helpful to a clear understanding of his testimony or to the determination of a fact issue. Whether the car had backed from the Brown driveway was a relevant issue. But more, its diagonal position in the highway, relative to the driveway, and its movement as he observed it, provided a rational basis for the opinion he gave. The difficulty of verbalizing the movement of objects and physical events often requires some degree of opinion by the observer and the speed and movement of automobiles, as of people, illustrate the reason for the rule. See *Mathis* v. *State*, 267 Ark. App. 904, 591 S.W. 2d 279 (1979). The trial court did not err in allowing the testimony.

The judgments are affirmed.

HICKMAN, J., consurs.

HOLT, PURTLE, and DUDLEY, JJ., dissent.

DARRELL HICKMAN, Justice, concurring. I concur because of the views I expressed in my dissenting opinion in Moore v. State, 268 Ark. 171, 594 S.W. 2d 245 (1980).

ROBERT H. DUDLEY, Justice, dissenting. The plurality opinion affirms two seizures, one, a seizure of the defendants and two, a seizure of the evidence. Both violate the Fourth Amendment.

I

Seizure of the Defendants

Stopping an automobile and detaining its occupants constitute a seizure within the meaning of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648 (1979), A stop and arrest without a warrant is valid only when the arresting officer has reasonable grounds to believe that the arrested person has committed a crime. Ark. Stat. Ann. § 43-403 (Repl. 1977); Johnson v. State, 249 Ark. 208, 458 S.W. 2d 409 (1970). Reasonable grounds under the Arkansas statute equate with the federal standard of probable cause for arrest. Tweedy v. United States, 435 F. 2d 702 (8th Cir. 1970). The majority opinion impliedly admits that at the time Deputy Swint stopped the appellants he did not know a crime had been committed and, at that moment, did not have probable cause for arrest. Yet, that is exactly what occurred as the appellants were arrested without probable cause. The testimony of Deputy Swint is clear:

Q. Where were you located when you stopped the defendants?
A. Just south of Superwood on Highway 130.
Q. Did you turn on your lights?
A. Yes, sir.
Q. And did they promptly stop, or did you have to give chase?
A. No, sir, they promptly stopped.

. . .

Q. When you stopped the vehicle, what did you do?

A.   *Came out with my shotgun, advised the subjects to step out of the car, placed them on the trunk of the vehicle, patted them down, handcuffed them, and one at a time, placed them in my vehicle. I advised them they were being held on suspicion of burglary.*

.   .   .

Q.   *So upon taking them out, you advised them they were under arrest for suspicion of burglary?*
A.   *Right.*
Q.   *And you restrained them, placed them physically under arrest in your vehicle in Pulaski County?*
A.   *Yes, sir.*

.   .   .

Q.   And what did you do with the three defendants and with the car at that time?
A.   At that time, about that time, Officer Todd had arrived. I told him about everything and I think an England officer, England police officer had also arrived, and he advised to go ahead and take them to the Lonoke Sheriff's office and we would get the England officer to stand by the vehicle until the wrecker gets there. I did so.
Q.   Did you then transport the three defendants to the jail?
A.   Yes, sir.

To constitute an arrest, as opposed to an investigatory stop, there must be three simultaneous occurrences. One, there must be a seizure. Two, the seizure must be performed with the intent to make an arrest, rather than make a temporary investigation, and three, the prisoner must understand he is being arrested rather than merely being stopped for investigation. These three events occurred. The appellants were arrested without probable cause and as a result, the evidence seized should have been suppressed. Nothing more need be said on this point.

The plurality of my brothers on this bench deny that

there was an arrest, but insist there was only an investigatory stop, that relatively new dimension by which seizures based on less than probable cause can be made and still comply with the reasonableness standard of the Fourth Amendment. Rules 2 and 3 of the Rules of Criminal Procedure, Ark. Stat. Ann. Vol. 4A (Repl. 1977), labeled "Pre-Arrest Contacts" and "Detention Without Arrest," deal with investigatory stops.

Rule 3.1 provides that a law enforcement officer may detain, for up to fifteen minutes, any person who he reasonably suspects is committing, has committed, or is about to commit a felony. Reasonable suspicion is required for an investigatory stop as distinguished from the probable cause required for an arrest. This lesser standard is defined in Rule 2.1 as:

> "Reasonable suspicion" means a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion.

The Supreme Court of the United States has now recognized four situations where seizures based on less than probable cause, or reasonable suspicion, have complied with the reasonableness standard. See Erickson, *Pronouncements of the United States Supreme Court Relating to the Criminal Law Field 1980-81,* The National Journal of Criminal Defense, Vol. VII (1981).

First, in *Terry v. Ohio,* 392 U.S. 1 (1968) a limited stop and frisk was approved. Second, in *Adams v. Williams,* 407 U.S. 143 (1972) a stop was approved to investigate an informant's tip that the person stopped was armed and carrying narcotics. Third, in *United States v. Brignoni-Ponce,* 422 U.S. 873 (1975), the Court held that border patrol officers may make investigatory stops of vehicles near the country's borders if there are articulable facts that reasonably warrant a suspicion that the vehicle contains illegal

aliens. Fourth, in *United States* v. *Cortez*, 449 U.S. 411 (1981), a case involving an investigatory stop similar to the one before us, the Court held that objective facts and circumstantial evidence suggesting that a particular vehicle may be involved in criminal activity may provide a sufficient basis to justify an investigatory stop of that vehicle. Recognizing that investigatory stops are subject to restraints against unreasonable seizures imposed by the Fourth Amendment, the Court defined the factors that create an objective manifestation that the person is, or is about to be, engaged in criminal activity. The analysis of that objective manifestation may include articulation of objective observations, information from police reports, or consideration of modes or patterns of operation of criminals. It is from these data that a trained officer draws inferences and makes deductions that might elude an untrained person. *United States* v. *Cortez*, supra.

Our rule and the comparative statute authorize an investigatory stop, *Hill* v. *State*, 275 Ark. 71, 628 S.W. 2d 285 (1982); *Holmes* v. *State*, 262 Ark. 683, 561 S.W. 2d 56 (1978), and the Supreme Court of the United States has held that investigatory stops can be valid. *United States* v. *Cortez*, supra. The Fourth Amendment does not require probable cause or reasonable grounds for this type of stop. The required standard for an investigatory stop is a reasonable suspicion as shown by an objective manifestation that the suspect is, has been, or is about to be, engaged in criminal activity.

In the case at bar the arresting officer had a report that three men were reconnoitering residences. He knew there had been previous burglaries in the area. However, he did not know that a crime had been committed and he did not know one was about to be committed. He arguably did not think he had cause to stop the appellants when he first saw them because he did not stop them. He had no additonal articulable facts when he finally stopped appellants' car.

At the suppression hearing the deputy admitted that he only had the information from an unknown and unidentifiable informant, the knowledge there had been prior

burglaries in the area and appellants' car was near Brown's home. His testimony is clear.

Q. So at the time you stopped them some distance down the road, you were, at that time, not aware of any crime that they had committed?
A. I believed they had committed one.
Q. I understand you believed that, even though you had no knowledge of that.
A. No proof at that time, no, sir.
Q. You did not even know whether a crime had been committed, is that correct?
A. For sure, no, sir.
Q. So you made a stop in Pulaski County out of your jurisdiction?
A. Along with a Pulaski County Deputy.
Q. They were not trying to evade you, no hot pursuit?
A. No, sir.
Q. And the only thing that you were basing that arrest on was the discussion that you had had with an unknown male?
A. Yes, sir.
Q. You had no knowledge of whether what he was telling you was truthful or untruthful, reliable or unreliable?
A. At the time he was telling me, no, sir.
Q. So you made the arrest, you had them in custody, placed them in your vehicle before you learned of any violation, if any, that they had committed?
A. I had them in my vehicle before I was certain whether or not the residence had been burglarized.
Q. Did they ever call on the radio and tell you these men had burglarized the place?
A. No, sir.
Q. Or did they give you any information concerning them burglarizing the home?
A. No, sir, he advised me the residence had been burglarized.
Q. So the only thing you knew at that time was you observed this vehicle on the road in front of or near this home, and had followed it?
A. Yes, sir.

Q. That's the only thing you had to connect them with any crime in this area?
A. Yes, sir.

There was no testimony introduced to demonstrate the modes or patterns of the earlier burglaries. There was no testimony to show if the earlier burglaries had taken place in the daytime or at night; no testimony to demonstrate if the police suspected one or more burglars; no testimony about the method of transportation used; and no testimony about footprints or fingerprints from the earlier burglaries. Deputy Swint admitted he did not know appellants and he knew nothing about their backgrounds. The appellants' manner of dress was not unusual and there was nothing suspicious about their appearance. He quite simply did not articulate a reasonable suspicion.

Articulated objective facts or articulated circumstantial evidence suggesting that a particular vehicle may be involved in criminal activity can provide a sufficient basis to justify an investigative stop of a vehicle. The test is whether under the totality of the circumstances — the whole picture — the officers are able to articulate a particularized and objective basis for suspecting the particular person stopped of criminal activity. *The specificity in the information is the touchstone on which a legitimate investigative stop is made. United States* v. *Cortez,* supra. In the case before us the officer did not articulate specific facts to reasonably suspect appellants had committed a crime. An inarticulable hunch is not sufficient to justify an investigatory stop. The articulation of facts or data is the only testimony from which the trial court can determine whether a trained police officer has drawn inferences and made valid decisions or whether an officer just played a hunch with no real grounds. When an officer does not articulate a reasonable suspicion for the investigatory stop it should be declared unlawful.

A hypothetical example, using facts comparable to the case at bar, will demonstrate the reason. Suppose you, the reader of this opinion, own a puppy and it strays away from your home. You get in your car and drive a few blocks, across a county line, and begin carefully looking for your pup.

Some unknown and unidentifiable person sees you "casing" the neighborhood and calls the police. A policeman knows that there have been burglaries in the area and he sees your car in front of a house which had been burglarized some months ago. According to the plurality opinion those facts are sufficient for the officer to follow you back into your original county (under a doctrine, not discussed by the plurality of "hot pursuit to investigate") and stop you pursuant to Rule 3.1. There were no stronger facts articulated in the principal case. Just as you would have been stopped on an unarticulable hunch in the hypothetical case, these appellants were stopped. The reason for requiring the articulation of a reasonable suspicion is obvious.

Since the stop was not shown to be lawful the evidence should have been excluded. *Wong Sun* v. *United States,* 371 U.S. 471 (1963).

## II

### Seizure of the Evidence

On the proof before the trial court the evidence should have been suppressed for a second reason. The general rule is that a seizure of evidence without a warrant is, per se, unreasonable. *Katz* v. *United States,* 389 U.S. 347 (1967). Unless the warrantless seizure in this case fits into an exception the evidence seized must be suppressed. The facts determine whether this case fits into an exception.

After the appellants were handcuffed and in the patrol car Deputy Swint opened the trunk of their car which was parked on the highway. He saw two bags in the trunk, a flowered-type one on the bottom and a black one on top. The flowered-type bag was zipped shut but the black one was partially unzipped and the deputy saw some silver inside. He stated that he could not identify it as the silver belonging to the Browns and he admitted that for all he knew it could have belonged to appellants. He closed the trunk and called Fulmer's Wrecker Service to tow the car to some type of sheriff's compound at Lonoke. Miles and perhaps hours later, at some type of sheriff's compound, a warrantless

search of the car was conducted. Deputy Swint's testimony is emphatic that the car was not searched on the highway:

> Q. But your testimony is that you did not search the vehicle on the highway?
> A. No, sir.
> Q. Irrspective of how you wrote your report, Mr. Swint, did you search those suitcases on the highway?
> A. No, sir.
> Q. Were they searched at the Sheriff's office?
> A. They was inventoried at the Sheriff's office, yes, sir.
>
> MR. EDWARDS: That's all.
> THE COURT: Was anything removed from the automobile before it was returned to the Sheriff's office?
> A. Just the three people.
> THE COURT: Any property of any kind?
> A. No, sir.
>
> . . .
>
> Q. You had the vehicle under control, is that correct? You had the three men out of it?
> A. Yes, sir.
> Q. You had the keys to it?
> A. Yes, sir.
> Q. You had officers there guarding it?
> A. Yes, sir.
> Q. And it was returned to the Sheriff's office?
> A. Yes, sir.
> Q. And I assume once it got there, or wherever the Sheriff's office is located, that you had it under guard, or whatever it took to make it secure?
> A. Yes, sir.

Those facts do not allow this case to fit into an exception to the general rule. The Supreme Court of the United States has set forth only one narrowly drawn exception where a seizure of evidence can be based on less than probable cause. It is the protective search doctrine set out in *Terry* v. *Ohio,* supra,

and *Adams* v. *Williams,* supra. It authorizes a search of the clothing and that area which is immediately reachable by the arrested person. The basis of this exception is that the arresting officer has every right to assure himself that the person does not have within reach a weapon, although the weapon may be evidence. The rationale of this exception is applicable to an investigatory stop, an arrest, or any other seizure. This exception to the general rule against warrantless searches is not applicable because this was not a frisk for the officer's protection.

There is another exception that is not as severely limited as the first exception. It is based on probable cause and is the search incident to arrest doctrine, but it is not applicable. "Once an accused is under arrest and in custody, then a search made at another place without a warrant, is simply not incident to arrest." *Chambers* v. *Maroney,* 399 U.S. 42 (1970), quoted in *Jenkins* v. *State,* 253 Ark. 249, 485 S.W. 2d 541 (1972).

The "plain view" exception, *Chimel* v. *California,* 395 U.S. 752 (1969), is not applicable as Deputy Swint did not have a plain view of the inside of the trunk of the car.

The plurality opinion concedes that the most recent "automobile exception" case, *New York* v. *Belton,* 450 U.S. 1028 (1981), is not applicable but argues that the 1925 "automobile exception" case of *Carroll* v. *United States,* 267 U.S. 132 (1925) is applicable. The 1925 case states that a warrantless search is valid "where it is not practical to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." In this case the car was in custody and could not be moved.

The plurality opinion states:

What is claimed, correctly we think, is that when Officer Swint learned the Brown residence had been burglarized, at that point he had probable cause to believe the vehicle contained evidence of the crime and, hence, a search of the vehicle was proper.

The quoted statement is contrary to the law as announced by the Supreme Court of the United States and followed by the court in *Jenkins* v. *State,* supra at 252, where we stated:

> It is true that there is language in the *Chambers* case suggesting that probable cause alone is sufficient to sustain a warrantless search of an automobile, but that point of view seems to have been rejected in the later case of *Coolidge* v. *New Hampshire,* 403 U.S. 443 (1971). There Justice Stewart speaking upon this point for the majority of the court, had this to say about a contrary position taken in Justice White's dissent in the *Coolidge* case: "If we were to agree with Mr. Justice White that the police may, whenever they have probable cause, make a warrantless entry for the purpose of making an arrest, and that seizures and searches of automobiles are likewise per se reasonable given probable cause, then by the same logic *any* search or seizure could be carried out without a warrant, and we would simply have read the Fourth Amendment out of the Constitution.

The plurality could validly contend that the case of *Colorado* v. *Bannister,* 449 U.S. 1 (per curiam 1980) stands for the proposition that when the police have probable cause to believe the vehicle contains evidence of a crime a warrantless search is permissible even when the car has been moved to the police station. Perhaps that leaves Arkansas with a higher standard than the United States for our cases, which are directly in point, hold that a warrantless search of a vehicle is invalid unless there is both probable cause and exigent circumstances. *Jenkins* v. *State,* supra; *Steel* v. *State,* 248 Ark. 159, 450 S.W. 2d 545 (1970). Arkansas cases directly in point should govern even if the plurality believe that our standard is a more stringent standard than the minimum required by the Constitution of the United States.

> We need not determine whether the rule is more restrictive than the principles to be distilled from various Supreme Court decisions, for, of course there is no constitutional objection to a rule of law which provides more protection to individual liberty than the

minimum required by the Constitution of the United States.

*Meadows* v. *State,* 269 Ark. 380, 602 S.W. 2d 636 (1980).

However, even if one discards all that has been written to this point as peripheral to the search of appellants' bags, the search of the bags still must fail. Both bags were completely closed, with the black one being zipped together completely and the flowered one being partially zipped. In the recent case of *Robbins* v. *California,* 450 U.S. 1039 (1981), the California Highway Patrol officers stopped the petitioner's car because he was driving erratically. One of the officesr asked petitioner for his license and registration, and when he opened the car door to get out the registration, the officers smelled marijuana smoke. One of the officers patted the petitioner down, and discovered a vial of liquid. The officers then searched the passenger compartment of the car and found marijuana as well as equipment for its use. After putting the petitioner in the patrol car, the officers opened the tailgate of the station wagon, uncovered a recessed luggage compartment, and found two oblong packages wrapped and sealed in green opaque plastic garbage bags. The officers unwrapped the packages and found 30 pounds of marijuana.

Petitioner, who was charged with various drug offenses, filed a pretrial motion to suppress the marijuana found in the two packages. The motion was denied and petitioner was convicted. The California Court of Appeals affirmed the judgment. Certiorari was granted and the case was remanded for further consideration in light of *Arkansas* v. *Sanders,* 442 U.S. 753 (1979). On remand, the court of appeals again found the warrantless opening of the packages constitutionally permissible, since the trial court reasonably could have concluded that the contents of the packages could have been inferred from their outward appearance. The Court again granted certiorari because of the continuing uncertainty as to whether closed containers found during lawful warrantless automobile searches may be searched without a warrant.

In a plurality decision written by Justice Stewart, the Court held that the contents of a closed container are fully protected by the Fourth Amendment's warrant requirement, unless the container is such that its contents are in plain view.

Relying on *United States* v. *Chadwick,* 433 U.S. 1 (1977) and *Arkansas* v. *Sanders,* supra, the Court rejected the contention that the "automobile exception" to the Fourth Amendment warrant requirement justifies the warrantless search of closed containers found inside the automobile. Justice Stewart stated that *Chadwick* and *Sanders* make it clear that a closed piece of luggage found in a lawful search of a car, is constitutionally protected to the same extent as closed pieces of luggage found anywhere else.

Respondent argued that the *nature* of the container may diminish the constitutional protection and that the Fourth Amendment protects only containers commonly used to transport personal effects. The Court rejected the argument for two reasons: (1) the Fourth Amendment protects people and their effects, whether the effects are personal or impersonal; and (2) it would be difficult if not impossible to perceive any objective criteria to determine what is commonly used to transport personal effects.

Justice Stewart stated that the wrapped marijuana did not fall under the exceptions announced in a footnote in *Arkansas* v. *Sanders,* supra. The footnote states that containers whose contents can be inferred from their outward appearance, for example a kit of burglary tools or a gun case, and containers whose contents are open to plain view, do not require a search warrant under the Fourth Amendment. These exceptions refer to items in a container that is not closed, or to containers which so clearly announce their contents, whether by their distinctive configuration, their transparency, or otherwise, that their contents are obvious to an observer. Justice Stewart concluded that the vague testimony of the police officer who said that he had heard that contraband was wrapped in a particular way did not establish that marijuana is ordinarily "packaged this way," and thus, did not cause the packages to fall within the

exceptions announced in *Sanders*. In a footnote, the Court stated that the prosecution did not argue that the search of the packages was incident to a lawful custodial arrest or that the petitioner consented to the search of the packages. See *New York* v. *Belton*, supra.

*Robbins*, supra, should not be ignored.

A second ground given by the plurality opinion for validating the search is:

> . . . Rule 14.1 (a), A. R. Crim. P., gives an officer the right to make a warrantless search of a vehicle detained on a public way if he has reasonable cause to believe the vehicle contains evidence subject to seizure, and exigent circumstances require immediate action to prevent removal or destruction of such evidence.

Rule 14.1 (a) simply is not applicable. The vehicle was not "detained on a public way" when searched; rather it was locked in a sheriff's compound. There was no testimony of "evidence" subject to seizure. No witness testified that even one piece of the Browns' property was identifiable. There were no exigent circumstances as the car was locked up in a compound and the appellants were in jail.

Perhaps, in this case, we have forgotten the proper role of the appellate court. It is nothing more and nothing less than to review the trial below and determine whether the appellants received a fair trial, not a perfect trial, but a fair trial. Precedent of this court as well as that of the Supreme Court of the United States hold that the evidence should have been suppressed. The trial court did not so hold and, as a consequence, the appellants did not receive a fair trial. I would grant apellants a new and fair trial. I dissent.

I am authorized to state that Mr. Justice HOLT and Mr. Justice PURTLE join in this opinion.